**No. 16-2983**

# In the
# United States Court of Appeals
## for the Seventh Circuit

OAKLAND POLICE AND FIRE RETIREMENT SYSTEM, individually
and on behalf of all others similarly situated, et al.,

*Plaintiffs-Appellants,*

v.

MAYER BROWN LLP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:15-cv-06742.
The Honorable **Robert W. Gettleman**, Judge Presiding.

## BRIEF OF DEFENDANT-APPELLEE
## MAYER BROWN LLP

STEPHEN NOVACK
  *Counsel of Record*
TIMOTHY J. MILLER
ANDREW P. SHELBY
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900

*Attorneys for Defendant-Appellee
Mayer Brown LLP*

## ORAL ARGUMENT REQUESTED



## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 16-2983

Short Caption: Oakland Police and Fire Retirement System, et al. v. Mayer Brown LLP

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Mayer Brown LLP

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Novack and Macey LLP

(3) If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/  Stephen Novack                    Date: 8/8/16

Attorney's Printed Name: Stephen Novack

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes**  X     **No** _____

Address: 100 North Riverside Plaza

Chicago, Illinois 60606

Phone Number: (312) 419-6900                    Fax Number: (312) 419-6928

E-Mail Address: snovack@novackmacey.com

rev. 01/15 GA

Appeal No. 16-2983

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

OAKLAND POLICE AND FIRE            )
RETIREMENT SYSTEM, individually and )
on behalf of all others similarly situated, et al.  )
                                   )
          Plaintiffs-Appellants,   )
                                   )     District Court No. 1:15-cv-06742
     v.                            )
                                   )     District Judge Robert W. Gettleman
MAYER BROWN LLP,                   )
                                   )
          Defendant-Appellee.      )

## DEFENDANT-APPELLEE MAYER BROWN LLP'S
## RULE 26.1 DISCLOSURE STATEMENT

Defendant-Appellee Mayer Brown LLP ("Mayer Brown"), by its attorneys, Novack and Macey LLP, submits this Disclosure Statement pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1.

1.    Mayer Brown does not have any parent corporations and does not issue any stock. No publicly held company owns 10% or more of Mayer Brown.

2.    The law firm whose partners or associates appeared for Mayer Brown in the district court is its current attorneys of record, Novack and Macey LLP, 100 North Riverside Plaza, Chicago, Illinois 60606.  Novack and Macey LLP is the only firm that is expected to appear for Mayer Brown in this Court.


Respectfully submitted,

MAYER BROWN LLP


By:_____/s/  Stephen Novack_____
          One Of Its Attorneys

Stephen Novack, Counsel of Record
Timothy J. Miller
Andrew P. Shelby
Amanda M.H. Wolfman
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900

Doc. #851056

2

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 16-2983

Short Caption: Oakland Police and Fire Retirement System, et al. v. Mayer Brown LLP

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Mayer Brown LLP

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Novack and Macey LLP

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Timothy J. Miller          Date: 8/8/16

Attorney's Printed Name: Timothy J. Miller

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ☒

Address: 100 North Riverside Plaza

Chicago, Illinois 60606

Phone Number: (312) 419-6900          Fax Number: (312) 419-6928

E-Mail Address: tmiller@novackmacey.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 16-2983

Short Caption: Oakland Police and Fire Retirement System, et al. v. Mayer Brown LLP

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Mayer Brown LLP

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Novack and Macey LLP

(3) If the party or amicus is a corporation:

   i) Identify all its parent corporations, if any; and

   N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   N/A

---

Attorney's Signature: s/ Andrew P. Shelby     Date: 8/8/16

Attorney's Printed Name: Andrew P. Shelby

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** _____     **No** ☒

Address: 100 North Riverside Plaza

Chicago, Illinois 60606

Phone Number: (312) 419-6900     Fax Number: (312) 419-6928

E-Mail Address: ashelby@novackmacey.com

rev. 01/15 GA

# Table Of Contents

Circuit Rule 26.1 Disclosure Statements .............................................................. i

Table of Authorities ........................................................................................ viii

Jurisdictional Statement .....................................................................................1

Issues Presented .................................................................................................2

Statement Of The Case .......................................................................................2

Summary Of Argument........................................................................................6

Standard Of Review ...........................................................................................8

Argument............................................................................................................9

I.     Plaintiffs failed to plausibly allege a duty on Mayer Brown's part, and allege facts that defeat any such duty. ........................................9

       A.     Plaintiffs did not satisfy the *Pelham* test. ......................................10

              1.     *Pelham* established a limited exception to the ordinary rule. ............................................................................ 10

              2.     Plaintiffs failed to meet *Pelham's* requirements. .............. 12

              3.     Plaintiffs' attempts to evade *Pelham* are unavailing. ....... 18

                     a.     GM And JPMorgan were Adverse. .......................... 18

                     b.     Plaintiffs' "task" argument fails .............................. 20

              4.     There is *no* allegation that GM's primary purpose in retaining Mayer Brown was to influence *Plaintiffs* or JPMorgan as *their* agent.................................................. 21

       B.     Plaintiffs' new argument that *Pelham* does not apply because Mayer Brown represented JPMorgan on unrelated matters was waived and is meritless...........................24

              1.     Plaintiffs waived this new argument. ................................. 24

              2.     In any event, Mayer Brown's duties to JPMorgan were limited to matters in which it represented JPMorgan. ............................................................................... 26

3. Plaintiffs have no standing to assert Mayer Brown's duties to JPMorgan in unrelated matters. ........................ 30

C. Plaintiffs' new "voluntary undertaking" argument was waived and is meritless. ........................................................32

1. Plaintiffs waived this new argument. ................................. 32

2. There is no voluntary undertaking exception. ................... 32

3. Plaintiffs' allegations show that Mayer Brown satisfied any such voluntary undertaking. ......................... 35

D. Negligent misrepresentation claims are governed by *Pelham*. ....38

II. Plaintiffs failed to sufficiently allege reliance. ........................................42

A. Reliance is a necessary element of both negligent misrepresentation and legal malpractice. ...................................42

B. Plaintiffs do not allege that *they* or JPMorgan as *their* agent relied on Mayer Brown. ............................................43

C. Plaintiffs do not specifically or plausibly allege that JPMorgan as agent for the Synthetic Lease Lenders relied on Mayer Brown. ........................................................44

D. Plaintiffs' allegations show that any reliance was unreasonable. ........................................................................ 45

III. Plaintiffs failed to sufficiently allege causation. .......................................50

A. Causation is a required element of Plaintiffs' claims ...................50

B. Plaintiffs' alleged harm was not foreseeable. ................................51

C. Plaintiffs' allegations establish an intervening cause. .................54

Conclusion ........................................................................................56

# Table Of Authorities

## Cases

*Allstate Ins. Co. v Menards*,
  285 F.3d 630 (7th Cir. 2002) ................................................ 40
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................... 8, 13, 17, 44, 45
*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*,
  1988 WL 101267 (N.D. Ill. Sept. 23, 1988) .............................. 41
*Auto-Owners Ins. Co. v. Konow*,
  57 N.E.3d 1244 (Ill. App. Ct. 2016) ............................ 34, 39, 41
*Avon Hardware Co. v. Ace Hardware Corp.*,
  998 N.E.2d 1281 (Ill. App. Ct. 2013) .................................... 42
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................... 8, 13, 17
*Blythe Holdings, Inc. v. DeAngelis*,
  750 F.3d 653 (7th Cir. 2014) ............................................ 54, 55
*Builders Bank v. Barry Finkel and Associates*,
  790 N.E.2d 30 (Ill. App. Ct. 2003) ...................................... 40
*Central States Joint Board v. Continental Assurance Co.*,
  453 N.E.2d 932 (Ill. App. Ct. 1983) .................................... 48, 49
*Christison v. Jones*,
  405 N.E.2d 8 (Ill. App. Ct. 1980) ...................................... 28
*City of Chi. v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004)............................................. 51
*Cleveland v. Rotman*,
  297 F.3d 569 (7th Cir. 20012) .......................................... 51
*Cozzi Ironlion & Metal, Inc. v. U.S. Office Equip., Inc.*,
  250 F.3d 570 (7th Cir. 2001) ............................................ 45
*Dahlin v. Jenner & Block L.L.C.*,
  2001 WL 855419 (N.D. Ill. Jul. 26, 2001).......................... 26, 30
*DeBouse v. Bayer*,
  *AG*, 922 N.E.2d 309 (Ill. 2009)........................................ 43
*DeLuna v. Burciaga*,
  857 N.E.2d 229 (Ill. 2006)........................................ 12, 27, 28
*Edelman v. Belsheim & Bruckert, LLC*,
  2012 WL 1933755 (S.D. Ill. May 291, 2012)........................... 41
*Exelon Corp. v. Dep't of Revenue*, 234 Ill. 2d,
  917 N.E. 2d 899 (Ill. 2009)............................................. 33, 34
*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*,
  2005 WL 843297 (N.D. Ill. Jan. 20, 2005)............................. 41
*Ferrell v. Express Check Advance of SC LLC*,
  591 F.3d 698 (4th Cir. 2010) ............................................ 1
*First Nat'l Bank of Moline v. Califf, Harper, Fox & Dailey*,
  548 N.E.2d 1361 (Ill. App. Ct. 19898) ........................ 12, 14, 15, 16, 18, 19

*Fitch v. McDermott, Will & Emery, LLP*,
   929 N.E.2d 1167 (Ill. App. Ct. 2010) ................................................ 26, 27
*Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*,
   720 F. Supp. 2d 978 (N.D. Ill. 2010) ................................................ 19
*Gallagher Corp. v. Russ*,
   721 N.E.2d 605 (Ill. App. Ct. 1999) ................................................ 39, 41
*Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*,
   980 N.E.2d 215 (Ill. App. Ct. 2012) ................................................ 43
*Geaslen v. Berkson, Gorov & Levin, Ltd.*,
   613 N.E.2d 702 (Ill. 1993) ................................................ 12, 19, 34
*Gold v. Vasileoff*,
   513 N.E.2d 446 (Ill. App. Ct. 1987) ................................................ 16, 18, 19
*Goodman v. Cody*,
   2012 IL App (5th) 110175-U (Ill. App. Ct. Sept. 24, 2012) ................................................ 9, 10
*Greycas v. Proud*,
   826 F.2d 1560 (7th Cir. 1987) ................................................ 19, 40, 41
*Hatchett v. W2X, Inc.*,
   993 N.E.2d 944 (Ill. App. Ct. 2013) ................................................ 30
*Home Loan Center, Inc. v. Flanagan*, No. 10 C,
   6787, 2012 WL 1108132 (N.D. Ill. Apr. 2, 2012) ................................................ 53
*Huang v. Brenson*,
   7 N.E.3d 729 (Ill. App. Ct. 2014) ................................................ 51
*Ignarski v. Norbut*,
   648 N.E.2d 285 (Ill. App. Ct. 1995) ................................................ 50, 56
*In re Complaint of Am. River Transp. Co.*,
   712 F. Supp. 2d 735 (N.D. Ill. 2010) ................................................ 37
*In re Estate of Powell*,
   12 N.E.3d 14 (Ill. 2014) ................................................ 9, 11, 12
*Jewish Hospital of St. Louis v. Boatmen's Nat'l Bank of Belleville*,
   633 N.E.2d 1267 (Ill. App. Ct. 1994) ................................................ 9
*Johnson Bank v. George Korbakes & Co.*,
   2005 WL 4983515 (N.D. Ill. Aug. 3, 2005) ................................................ 41, 42
*Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n*,
   441 N.E.2d 864 (Ill. App. Ct. 1982) ................................................ 47
*Kelley v. Carbone*,
   837 N.E.2d 438 (Ill. App. Ct. 2005) ................................................ 39, 41
*Kirschenbaum v. 650 Fifth Ave. & Related Props.*,
   830 F.3d 107 (2d Cir. 2016) ................................................ 1
*Knight v. Enbridge Pipelines (FSP)*,
   LLCG, 759 F.3d 675 (7th Cir. 2014) ................................................ 35
*Kopka v. Kamensky & Rubenstein*,
   821 N.E.2d 719 (Ill. App. Ct. 2004) ................................................ 11
*Lummus Co. v. Commonwealth Oil Refining Co.*,
   297 F.2d 80, 89 (2d Cir. 1961) ................................................ 37
*Lyons v. SBCI Swiss Bank Corp. Inv. Banking, Inc.*,
   1995 WL 151810 (N.D. Ill. Mar. 31, 1995) ................................................ 46

*M.O.C.H.A. Soc'y, Inc. v. City of Buffalo,*
689 F. 3d 263 (2d Cir. 2012)...................................................................... 37

*Majumdar v. Lurie,*
653 N.E.2d 915 (Ill. App. Ct. 1995) .......................................................... 26

*Massey v. Merrill Lynch & Co.,*
464 F.3d 642 (7th Cir. 2006) ....................................................................... 8

*McLane v. Russell,*
546 N.E.2d 499 (Ill. 1989)................................................................... 12, 20

*Mercantile Capital Partners v. Agenzia Sports, Inc.,*
2005 WL 351926 (N.D. Ill. Feb. 10, 2005) ............................................... 41

*Merrilees v. Merrilees,*
998 N.E.2d 147 (Ill. App. Ct. 2013) ......................................................... 46

*Metromedia Co. v. Fugazy,*
983 F.2d 350 (2d Cir. 1992)....................................................................... 37

*Mitchell v. Schain, Fursel & Burney, Ltd.,*
773 N.E.2d 1192 (Ill. App. Ct. 2002) .................................................. 54, 55

*MMG Fin. Corp. v. Midwest Amusements Park LLC,*
630 F.3d 651 (7th Cir. 2011) ........................................................ 25, 32, 37

*Neptuno v. Arbor,*
692 N.E.2d 812,at  (Ill. App. Ct. 1998) ................................................... 47

*O'Connor v. Asperger Caraher LLC,*
2006 WL 3210498 (N.D. Ill. Nov. 6, 2006) .............................................. 47

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v.*
    *JP Morgan Chase Bank (In re Motors Liquidation Co.),*
755 F.3d 78 (2d Cir. 2014)........................................................................... 5

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v.*
    *JP Morgan Chase Bank (In re Motors Liquidation Co.),*
777 F.3d 100 (2d Cir. 2015)..................................................... 4, 5, 49, 55

*Official Comm. v. JPMorgan Chase Bank, N.A.,*
103 A.3d 1010 (Del. 2014) .................................................................. 45, 46

*Ogle v. Fuiten,*
466 N.E.2d 224 (Ill. 1984)......................................................................... 12

*Orr v. Shepard,*
524 N.E.2d 1105 (Ill. App. Ct. 1988) ........................................ 9, 16, 18, 19

*Pelham v. Griesheimer,*
440 N.E.2d 96 (Ill. 19892)................................................................. passim

*Phelps v. Land of Lincoln Legal Assistance Foundation, Inc.,*
2016 IL App (5th) 150380, ¶22 .................................................................. 14

*Puffer v. Allstate Ins. Co.,*
675 F.3d 709 (7th Cir. 2012) ........................................................ 25, 32, 37

*Purmal v. Robert N. Wadington & Assocs.,*
820 N.E.2d 86 (Ill. App. Ct. 2004) ....................................................... 51, 56

*Randazzo v. Harris Bank Palatine, N.A.,*
104 F. Supp. 2d 949 (N.D. Ill. 2000) ........................................................ 47

*Rocha v. Rudd,*
826 F.3d 905 (7th Cir. 2016) ................................................................ 8, 42

*Rozny v. Marnul*,
   250 N.E.2d 656 (Ill. 1969) ........................................................................ 23

*Schechter v. Blank*,
   627 N.E.2d 106 (Ill. App. Ct. 1993) ....................................................... 11

*Schmidt v. Landfield*,
   169 N.E.2d 229 (Ill. 1960) ................................................................ 48, 50

*Schwartz v. Greenfield, Stein & Weisinger*,
   396 N.Y.S.2d 582 (N.Y. Sup. Ct. 1977) ................................................ 38

*Siegel Dev., LLC v. Peak Constr. LLC*,
   993 N.E.2d 1041 (Ill. App. Ct. 2013) ..................................................... 48

*Siloam Springs Hotel, L.L.C. v. Century Surety Co.*,
   781 F.3d 1233 (10th Cir. 2015) ................................................................. 1

*Simon v. Wilson*,
   684 N.E.2d 791 (Ill. App. Ct. 1997) ....................................................... 26

*Teamsters Local 282 Pension Tr. Fund v. Angelos*,
   839 F.2d 366, at (7th Cir. 1988) .............................................................. 50

*Virnich v. Vorwald*,
   664 F.3d 206 (7th Cir. 2011) ................................................................... 22

*Wafra Leasing Corp., 1999-A-1A v. Prime Capital Corp.*,
   192 F. Supp. 2d 852 (N.D. Ill. 2002) ................................................ 34, 41

*Walton Risk Services, Inc. v. Clarendon Americas Ins. Co.*,
   2002 WL 31415769 (N.D. Ill. Oct. 25, 2002) ......................................... 41

*Webb v. Damisch*,
   842 N.E.2d 140 (Ill. App. Ct. 2005) .......................................... 50, 55, 56

*West Bend Mutual Ins. Co. v. Schumacher*,
   844 F.3d 670 (7th Cir. 2016) ................................................................... 13

*Williams v. Dieball*,
   724 F.3d 957 (7th Cir. 2013) ................................................................... 25

*Wyatt v. Sanan*,
   2008 U.S. Dist. LEXIS 33329 (N.D. Ill. Apr. 22, 2008) ................... 34, 35

*Yung v. Lee*,
   432 F.3d 142 (2d Cir. 2005) .................................................................... 37

*Zahorik v. Smith Barney, Harris Upham & Co.*,
   664 F. Supp. 309 (N.D. Ill. 1987) ..................................................... 50, 56

## Statutes

28 U.S.C. §1332(d)(10) ................................................................................ 1

## Rules

Illinois Supreme Court Rule 23(e) .............................................................. 10

## Jurisdictional Statement

Plaintiffs' jurisdictional statement is complete and correct.

After Plaintiffs filed their Docketing Statement, the Court issued an order questioning whether the District Court had jurisdiction over the subject matter of this action in light of the fact that Mayer Brown LLP ("Mayer Brown") is considered an unincorporated association for purposes of diversity jurisdiction and, as such, is ordinarily deemed to be a citizen of every state and foreign country in which its partners are domiciled. (Doc. No. 5.) As the parties explained in their responses to the Court's order, however, CAFA alters that ordinary rule. (Doc Nos. 7, 13.) CAFA treats unincorporated associations as if they were corporations, providing that, for purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. §1332(d)(10).

Mayer Brown, Plaintiff Employees' Retirement System of the City of Montgomery ("Montgomery") and Plaintiff Oakland Police and Fire Retirement System ("Oakland") are all "unincorporated associations" as that term is used in 28 U.S.C. §1332(d)(10) because they are business entities other than corporations.  *See Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 702-04 (4th Cir. 2010); *see also Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107,127 n.10 (2d Cir. 2016); *Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015). Therefore, for

CAFA purposes, Mayer Brown is deemed to be a citizen of Illinois, while Montgomery is deemed to be a citizen of Alabama and Oakland is deemed to be a citizen of California. Accordingly, this case meets CAFA's minimal diversity requirement.

## Issues Presented

1.    Did the District Court correctly dismiss the Amended Complaint because it does not sufficiently or plausibly allege that Mayer Brown owed any duty to Plaintiffs and because the facts it does allege defeat any such duty?

2.    Should the dismissal be affirmed on the alternative ground that the Amended Complaint failed to sufficiently or plausibly allege reliance and because the facts it does allege defeat any such reliance?

3.    Should the dismissal be affirmed on the alternative ground that the Amended Complaint failed to sufficiently or plausibly allege causation and because the facts it does allege defeat any such causation?

## Statement Of The Case

At issue in this case is Mayer Brown's conduct in representing GM in connection with the payoff of a "Synthetic Lease" transaction. JPMorgan was the administrative agent for the Synthetic Lease Lenders and was represented by its own counsel, Simpson Thacher and Bartlett LLP ("Simpson"). (Amended Compl., Dkt. No. 33, ¶¶21, 25, 29.) Mayer Brown prepared drafts of a number of documents necessary to release the security interests that had

been pledged to collateralize the Synthetic Lease. Unfortunately, Mayer Brown made a mistake by including in the list of security interests to be released a security interest that had nothing to do with the Synthetic Lease. This "Term Loan Security Interest" had been pledged to support a wholly unrelated, $1.5 billion "Term Loan" between GM and JPMorgan, in its capacity as administrative agent for an entirely different group of lenders (the "Term Loan Lenders").

The error cropped up in three different draft documents that Mayer Brown provided to JPMorgan and its counsel: (i) a "Closing Checklist" listing (among other things) the security interests that were to be released, (ii) a termination statement that, once filed, mistakenly released the Term Loan Security Interest, and (iii) "Escrow Instructions" that listed the termination statement as a document to be filed for the Synthetic Lease payoff.  (*Id.* ¶¶68-70.)  As the Second Circuit would later explain, JPMorgan and its counsel reviewed and approved the drafts, and ultimately the Term Loan Security Interest was released:

> [T]o represent its interests in the [Synthetic Lease payoff] transaction, JPMorgan relied on [Simpson], its counsel for matters related to the Synthetic Lease. . . .
>
> After Mayer Brown prepared the Closing Checklist and draft UCC-3 termination statements, copies were sent for review to a Managing Director

at JPMorgan who supervised the Synthetic Lease payoff and who had signed the Term Loan documents on JPMorgan's behalf. Mayer Brown also sent copies of the Closing Checklist and draft UCC-3 termination statements to JPMorgan's counsel, [Simpson], to ensure that the parties to the transaction agreed as to the documents required to complete the Synthetic Lease payoff transaction. Neither directly nor through its counsel did JPMorgan express any concerns about the draft UCC-3 termination statements or about the Closing Checklist. A [Simpson] attorney responded simply as follows: "Nice job on the documents. . . ."

After preparing the closing documents and circulating them for review, Mayer Brown drafted an Escrow Agreement that instructed the parties' escrow agent how to proceed with the closing. . . . When Mayer Brown e-mailed a draft of the Escrow Agreement to JPMorgan's counsel for review, the same [Simpson] attorney responded that "it was fine" and signed the agreement.

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JP Morgan Chase Bank (In re Motors Liquidation Co.)*, 777 F.3d 100, 104-105 (2d Cir. 2015).

After GM declared bankruptcy, the Term Loan Lenders were fully repaid. (Amended Compl. ¶90.) Litigation then ensued over whether they had been properly paid in light of the release of the Term Loan Security Interest.

The bankruptcy court found the mistaken release ineffective. On appeal, the Second Circuit, after certifying a question to the Delaware Supreme Court, agreed that the security interest had been mistakenly released but held that the release was enforceable. *See Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JP Morgan Chase Bank (In re Motors Liquidation Co.)*, 755 F.3d 78 (2d Cir. 2014), and 777 F.3d at 103-05 (2d Cir. 2015) (Amended Compl. ¶104). As a result of the Second Circuit's decision, Plaintiffs are subject to potential clawbacks, although no judgment has yet been entered against them. (Amended Compl. ¶107.)

Plaintiffs filed this putative class action on behalf of the 400 Term Loan Lenders, claiming that Mayer Brown's negligence resulted in the Term Loan Security Interest being released, thus causing them to suffer harm. Plaintiffs do not allege that Mayer Brown engaged in any intentional wrongdoing. Nor do they contend that anyone—whether GM, JPMorgan or any of the Term Loan Lenders—ever retained Mayer Brown to advise them in connection with the Term Loan. In fact, Plaintiffs do not allege that Mayer Brown even knew that the Term Loan or Plaintiffs existed. Although it is undisputed that Mayer Brown had no client relationship with JPMorgan or Plaintiffs with respect to either the Synthetic Lease or the Term Loan, Plaintiffs alleged that Mayer Brown breached a duty of care it owed to them by causing the wrong security interest to be released.

5

The District Court dismissed the Amended Complaint on the ground that Plaintiffs had not pleaded any plausible basis for their conclusory assertion that Mayer Brown owed duties to Plaintiffs. The parties agreed that Illinois law governed. The District Court held that, under Illinois law, the critical question was whether GM's primary purpose in retaining Mayer Brown was to influence or benefit Plaintiffs or JPMorgan as Plaintiffs' agent. Although Plaintiffs recited that this was GM's primary purpose, the court concluded that the Amended Complaint's factual allegations "directly contradict[ed]" that conclusion. (S.A. 9-12.)

On appeal, Plaintiffs rely heavily on their allegation that JPMorgan was a "longstanding" client of Mayer Brown in a variety of other, unrelated matters. (Amended Compl. ¶¶18-20.) However, Plaintiffs do not allege that JPMorgan was a Mayer Brown client as to the Synthetic Lease or Term Loan, or that Mayer Brown violated any conflict of interest rule by representing GM in the Synthetic Lease payoff.

## Summary Of Argument

The District Court's dismissal order should be affirmed for any one of three independent reasons.

*No duty.* As the District Court properly concluded, Plaintiffs failed to allege a plausible factual basis for their claim that Mayer Brown owed them a duty of care. Under *Pelham v. Griesheimer*, 440 N.E.2d 96 (Ill. 1982), Mayer Brown would owe such a duty only if GM had retained Mayer Brown for the

primary purpose of benefitting or influencing Plaintiffs or JPMorgan. There is not a single fact alleged in the Amended Complaint to support such an assertion; indeed, as the District Court noted, Plaintiffs' factual allegations belie any claim that GM hired Mayer Brown to benefit or influence JPMorgan in its capacity as agent for the Synthetic Lenders. And *no one* was thinking of the Term Loan Lenders because the Term Loan had nothing to do with the Synthetic Lease that was the subject of Mayer Brown's representation of GM.

Unable to show that the District Court erred in applying *Pelham*, on appeal Plaintiffs have shifted their focus. Plaintiffs now lead with the argument that *Pelham* is irrelevant because JPMorgan was a Mayer Brown client on *other* matters wholly unrelated to either the Synthetic Lease or the Term Loan. Plaintiffs contend that under those circumstances Mayer Brown owed fiduciary duties to JPMorgan even when it was representing GM across the table from JPMorgan and even though GM did not hire Mayer Brown to benefit or influence JPMorgan. That argument is waived because it was not presented below. In any event, it is wrong: a lawyer owes duties only to his or her own client in a transaction. Although the lawyer may need a conflict waiver if the opposing party is a client in other, unrelated matters, it would be contrary to the most fundamental rules that apply to the legal profession to conclude that in such circumstances a lawyer owes fiduciary duties to the opposing side. Indeed, if accepted, Plaintiff's position would turn upside-down

the long-standing fiduciary duties of loyalty and care that lawyers owe to their *own* clients in transactions.

*No reliance.*  Plaintiffs have not alleged any plausible factual basis for their conclusory assertion that they or JPMorgan (in any capacity) relied on Mayer Brown's statements. Moreover, JPMorgan could not have *reasonably* relied on Mayer Brown's statements, which were reviewed by JPMorgan and Simpson, one of the foremost law firms in the world.

*No causation.*  Plaintiffs have not alleged any plausible factual basis for concluding that Mayer Brown's alleged errors caused them any harm inasmuch as Simpson and JPMorgan had ample opportunity to discover and correct those alleged errors.

## Standard Of Review

This Court "reviews a dismissal under Rule 12(b)(6) for failure to state a claim *de novo*, and it may affirm on any ground contained in the record," even if not relied on by the district court. *Rocha v. Rudd*, 826 F.3d 905, 909 (7th Cir. 2016).  Under Rule 12(b)(6), a plaintiff who pleads facts that defeat its claims has "[pled] itself out of court." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).  Further, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Argument**

**I.    Plaintiffs failed to plausibly allege a duty on Mayer Brown's part, and allege facts that defeat any such duty.**

Mayer Brown cannot be liable to Plaintiffs for negligence unless it owed them a duty. *Pelham*, 440 N.E.2d at 98 ("[a] complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff.").  "Whether a legal duty exists is a question of law to be determined by the court." *In re Estate of Powell*, 12 N.E.3d 14, 20 (Ill. 2014).

Plaintiffs argue (Brief at 29) that Illinois courts "hesitate" to resolve the scope of duty when there are "disputed or undeveloped" facts.  Not so.  Illinois courts routinely dismiss complaints brought by non-clients against lawyers on the ground that no duty is owed as a matter of law. *E.g.*, *First Nat'l Bank of Moline v. Califf, Harper, Fox & Dailey*, 548 N.E.2d 1361, 1363-64 (Ill. App. Ct. 1989); *Orr v. Shepard*, 524 N.E.2d 1105, 1107-09 (Ill. App. Ct. 1988); *Gold v. Vasileff*, 513 N.E.2d 446, 448 (Ill. App. Ct. 1987).

Plaintiffs' cases do not hold otherwise.  *Jewish Hospital of St. Louis v. Boatmen's Nat'l Bank of Belleville*, 633 N.E.2d 1267, 1275 (Ill. App. Ct. 1994) (Brief at 29), acknowledges that "whether any party owes a duty to another is *always* a question of law." *Id.* at 1275 (emphasis added).  Plaintiffs' reliance on *Goodman v. Cody*, 2012 IL App (5th) 110175-U (Ill. App. Ct. Sept. 24, 2012) (Brief at 29-30), is also misplaced.  Apart from the fact that *Goodman* is an

9

unpublished opinion and thus not citable under Illinois Supreme Court Rule 23(e), the opinion proves Mayer Brown's point because it *affirmed* dismissal of certain counts against lawyers based on lack of duty.  *Id.* at ¶45.

Here, Plaintiffs sought to hold Mayer Brown liable for negligence on the novel theory that Mayer Brown owed duties to non-clients. As the District Court properly held, Plaintiffs' complaint did not plausibly show that this case fits within the very narrow category of cases where a lawyer may be deemed to owe a duty to a non-client under Illinois law.

### A.     Plaintiffs did not satisfy the *Pelham* test.

#### 1.     *Pelham* established a limited exception to the ordinary rule.

In *Pelham*, the Illinois Supreme Court recognized that "[i]n the area of legal malpractice, the attorney's obligations to his client must remain paramount."  440 N.E.2d at 99.  The court acknowledged that lawyers can owe duties to non-clients, but only in the limited situation where the *client's* intent was to benefit the non-client and then only if the non-client "allege[s] and prove[s] that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship."  *Id.*  In other words:

> [F]or a nonclient to succeed in a negligence action
> against an attorney, he must prove that the primary
> purpose and intent of the attorney-client

> relationship itself was to benefit or influence the
> third party.

*Id.* at 99-100. *Pelham* also made clear that courts should be especially reluctant to impose a duty to non-clients in adversarial settings:

> Where a client's interest is involved in a proceeding
> that is adversarial in nature, the existence of a duty
> of the attorney to another person would interfere
> with the undivided loyalty which the attorney owes
> his client and would detract from achieving the most
> advantageous position for his client.

*Id.* at 100; *see also Schechter v. Blank*, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993) ("Since an attorney 'must represent his client with zeal and undivided loyalty in adversarial matters,' he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability.").

Illinois courts have emphasized that *Pelham* created an extremely narrow exception to the general rule that attorneys owe duties *only* to their clients. *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004); *Schechter*, 627 N.E.2d at 109. Indeed, after *Pelham*, the Illinois Supreme Court has allowed suits by only three types of non-clients:

- Decedents' next of kin, who are statutory
  beneficiaries of wrongful death actions. *In re*
  *Estate of Powell*, 12 N.E.3d 14, 20-22 (Ill.

2014); *DeLuna v. Burciaga*, 857 N.E.2d 229, 247 (Ill. 2006);

- Intended beneficiaries of wills. *McLane v. Russell*, 546 N.E.2d 499, 502-04 (Ill. 1989); *Ogle v. Fuiten*, 466 N.E.2d 224, 226-27 (Ill. 1984); and

- Recipients of formal opinion letters authored by attorneys and addressed to other parties to a transaction at the direction of their own clients. *Geaslen v. Berkson, Gorov & Levin, Ltd.*, 613 N.E.2d 702, 704 (Ill. 1993).

Moreover, Illinois courts applying *Pelham* have repeatedly dismissed complaints seeking to impose duties to non-clients who stand on the opposite sides of transactions. As *Gold* explained in affirming the dismissal of such a complaint, "[a] lawyer must represent his client with zeal and undivided loyalty in adversarial matters, such as negotiations and drafting of documents concerning the sale of a business." 513 N.E.2d at 448. *Accord First Nat'l Bank*, 548 N.E.2d at 1363-64 (affirming dismissal; involving loan negotiations).

### 2.  Plaintiffs failed to meet *Pelham's* requirements.

In their Amended Complaint, Plaintiffs attempted to meet *Pelham*'s requirements by alleging in ¶33 that GM's "primary purpose and intent in

engaging [Mayer Brown] to prepare the Synthetic Lease Closing Documents was to effect the Synthetic Lease Payoff by influencing JPMorgan to execute and/or approve the Synthetic Lease Closing Documents prepared by [Mayer Brown]." (Amended Compl. ¶33.) As the District Court properly held, this allegation was woefully insufficient to meet Plaintiffs' burden.

*First*, ¶33 is utterly conclusory, simply regurgitating the legal requirement adopted in *Pelham*. No supporting *facts* are pleaded, such as why GM's obvious need for protecting itself throughout the Synthetic Lease transaction was *not* its primary purpose. *See West Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670 (7th Cir. 2016) (applying *Iqbal/Twombley* plausibility standard to legal malpractice claim and affirming dismissal thereof where conclusory causation allegations lacked supporting facts).

*Second*, it is implausible that GM's *primary* purpose and intent in hiring Mayer Brown for the Synthetic Lease payoff was to influence JPMorgan to execute the closing documents prepared by Mayer Brown. The transaction was sophisticated and complicated, involving multiple properties and substantial funds, and GM needed legal representation to protect *its own* interests. (Amended Compl. ¶20). For example, GM needed to make sure that the various documents executed in connection with the payoff were legally binding and effective, that all required paperwork to unwind the Synthetic Lease was completed, that GM's obligations were properly terminated and that it was released from any liability related thereto, that it obtained a

13

release of all applicable security for the Synthetic Lease, and that it got clean title to the previously leased properties.  When the time came to unravel the transaction, GM's primary interest was obviously to make sure that its interests were fully protected.

In any event, it would stand *Pelham* on its head to accept Plaintiffs' argument that an intent to "influence" JPMorgan to accept the documents Mayer Brown drafted was enough to give rise to a duty on Mayer Brown's part to JPMorgan. If Plaintiffs were right, then in every transaction, each lawyer would owe the *other* party a duty.  That is because, in *every* transaction, each side hopes the other side will agree to use its counsel's version of the necessary documents.  Yet that cannot possibly create a duty by one side's lawyer to the other side.  *See Phelps v. Land of Lincoln Legal Assistance Foundation, Inc.*, 2016 IL App (5th) 150380, ¶22 (*Pelham's* "or influence" language did not create an independent source of duty).

*Third*, *Pelham* cannot be satisfied where, as here, the matter was adversarial and Plaintiffs admit that the non-client (JPMorgan) had its own, highly competent and experienced counsel. Cases applying *Pelham* on motions to dismiss consistently hold that attorneys do not owe duties to the "other side" in a transaction, especially when, as here, the other side is represented by counsel.

For example, in *First National*, a case the District Court cited but Plaintiffs ignore, the court—just like the District Court here—refused to find

14

that a *borrower's attorney* owed a duty to the *client's lender*.  548 N.E.2d at

1363-64.  There, the borrowers had retained a lawyer to help them obtain a

loan. *Id.* at 1362. The bank conditioned the loan on a guarantee from the Small

Business Administration, which required a second mortgage on the borrowers'

house. *Id.*  The borrowers' lawyers made a mistake in papering the second

mortgage; as a result, when the borrower declared bankruptcy, the mortgage

was invalidated.  *Id.*  The bank sued the borrowers' lawyer for negligently

preparing the second mortgage.  *Id.*  That lawsuit was dismissed; the appellate

court affirmed.  *Id.* at 1362, 1364.  Relying on *Pelham*, the appellate court

rejected the notion that the lawyer's representation was "of a non-adversarial

nature" and that the lawyer's preparation of the mortgage documents was

therefore "intended to benefit both" the borrower and the bank. As the court

explained, this argument:

> ignores the "primary purpose and intent" language
> of *Pelham*.  In the instant case the [borrowers],
> experienced business people, went out and hired an
> attorney for the sole purpose of assisting them in the
> procurement and execution of a loan necessary to
> keep their business afloat.  The primary and direct
> purpose of the relationship was for [the lawyer] to
> help the [borrowers] find a loan and for him to
> oversee the execution of the loan documents.
> Obviously another party was going to benefit
> *somewhat* by making a loan to the [borrowers], *i.e.*
> by receiving interest from the loan, but it cannot be

> said that this was the primary and direct reason for
> the [lawyer-client] relationship.

*Id.* at 1363 (emphasis in original).

*First National* also found it significant that "[n]othing prevented the [bank] from having [the borrowers' lawyer] return the completed documents to the [bank] for [its] own counsel to review." *Id.* at 1364.  The facts here are even stronger because the things that "could have" happened there *did* happen here: JPMorgan *did* hire its own counsel who, in fact, *reviewed* and *approved* the relevant documents, and JPMorgan itself also *approved* those documents.

*Orr v. Shepard*, 524 N.E.2d 1105 (Ill. App. Ct. 1988), which Plaintiffs also ignore, is strikingly similar to our case.  In *Orr*, *sellers* sued the *buyer's lawyer* for negligently preparing an escrow agreement.  *Id.* at 1106-07.  The trial court dismissed the complaint on the ground that, as a matter of law, the *buyers' lawyers'* preparation of an escrow agreement did not create a duty to the *sellers*. *Id.* The appellate court affirmed, because "[t]he primary purpose of [the lawyer's] work was to protect the interest of [the buyers]."  *Id.* at 1108.

*Gold* is another case Plaintiffs ignore. There, *buyers* sued the *sellers' lawyer* after the sellers failed to perform under a sales contract.  513 N.E.2d at 447.  The appellate court rejected the buyers' claim in short order:

> A lawyer must represent his client with zeal and
> undivided loyalty in adversarial matters, such as
> negotiations and drafting of documents concerning
> the sale of a business.  Defendant [*i.e.*, the sellers'

> lawyer] owed no fiduciary duties to the buyers, and
> if the buyers reposed trust and confidence in
> defendant, it was unreasonably placed . . . .

*Id.* at 448 (affirming dismissal).

Under this case law, Plaintiffs' conclusory allegation in ¶33 cannot possibly satisfy *Pelham*. And, although Plaintiffs refer (at 26-27) to other allegations they say satisfy *Pelham*, all of them relate to the intent of JPMorgan, Simpson and Mayer Brown. None of them relates to *GM's* intent in hiring Mayer Brown, which is all that matters under *Pelham*. To put it another way: Plaintiffs could perhaps establish that *JPMorgan* intended to benefit them by hiring *Simpson*. But they cannot establish that *GM* had any such intent in hiring *Mayer Brown*.

Finally, Plaintiffs' argument (at 27-28) that the District Court erroneously applied Rule 9(b)'s heightened pleading standards is wrong. In fact, the District Court applied the well-established pleading standards set forth in *Twombly* and *Iqbal*. (S.A. at 9-11.) Plaintiffs' argument is a thinly-veiled plea for an exception to *Twombly* and *Iqbal*, in which courts must accept even conclusory or implausible allegations of intent. The cases Plaintiffs cite (at 28) on this point do not resemble our case and do not support such a proposition.

17

### 3. Plaintiffs' attempts to evade *Pelham* are unavailing.

#### a. GM And JPMorgan were Adverse.

Plaintiffs try to avoid *Pelham* by arguing (at 23-25) that JPMorgan and GM were not adversaries. Plaintiffs confuse lack of strife with lack of adverse interests. Similarly, the fact that Mayer Brown and Simpson were "cooperative" ignores the fact that GM and JPMorgan had contrasting and differing interests as to the Synthetic Lease payoff and thus were adversaries. As the District Court properly held (at S.A. 10), it was in GM's interest to make sure all security for the Synthetic Lease was released and that there was no chance JPMorgan would retain any lien or collect more money from GM. JPMorgan had different interests. It needed to ensure the Synthetic Lease was fully paid off. Unlike GM, JPMorgan would not be harmed if it was overpaid or if it continued to hold unneeded security. And only JPMorgan had an interest in ensuring that security interests were not *improperly* released. Indeed, the very fact that JPMorgan was represented by its own counsel, who reviewed and approved the documents Mayer Brown initially drafted, confirms that the parties were adverse.

As demonstrated above, Illinois courts have rejected the notion that common interests in seeing a deal completed means that parties are not adversaries and the lawyers therefore owe duties to the other side. *See First National*, 548 N.E.2d at 1363-64; *Orr*, 524 N.E.2d at 1108; *Gold*, 513 N.E.2d at 447-48. In fact, the *only* cases under Illinois law where a duty has been found

to be owed by a lawyer to a party on the other side of a transaction involved situations where (a) one side had the contractual obligation to provide an attorney's opinion letter to the other side; (b) counsel addressed the opinion to the other side; and (c) the client's primary (or sole) purpose in causing counsel to issue the opinion was truly to influence the other side. *See, e.g., Greycas v. Proud*, 826 F.2d 1560, 1562 (7th Cir. 1987); *Geaslen*, 613 N.E.2d at 704.

Plaintiffs say (at 24, 33) that *Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*, 720 F. Supp. 2d 978 (N.D. Ill. 2010), supports their argument that Mayer Brown and JPMorgan were not adversaries. But that case involved an attorney who was a "closing agent," and Judge Gettleman's finding there was that the attorney's work "was nonadversarial in the sense that an attorney's services as a closing agent are typically relied on by all parties to a real estate transaction." *Id.* at 991. As such, the allegation that the non-client relied upon the closing agent was plausible. Here, Mayer Brown was not a closing agent. Instead, it was acting for GM, while Simpson was doing the same for the other side. Thus, here, Judge Gettleman was correct that Plaintiffs' conclusory assertion that GM's primary purpose in hiring Mayer Brown was to influence Plaintiffs is implausible.

In a last-ditch effort to preserve their complaint, Plaintiffs contend (at 24-25) that whether a relationship is adversarial is a fact question that cannot be resolved on a motion to dismiss. But they ignore that *Illinois* courts in *First National*, *Gold* and *Orr* did just that. And the out-of-state cases Plaintiffs cite

19

are irrelevant because they did not apply Illinois law (including *Pelham*), nor did they address a lawyer's duties (or lack thereof) to the opposing side of a transaction.

### b.     Plaintiffs' "task" argument fails.

Plaintiffs also contend (at 20-23) that, even if GM and JPMorgan were adverse, *Pelham* allows a duty to be created for a single "task." But *Pelham* speaks in terms of a *transaction*, not a task.  Moreover, with the exception of opinion letters, no Illinois court has ever imposed duties to non-clients in a transactional setting with respect to a "task." Opinion letters can be an exception when it is determined that the client's intent is that the non-client will rely on its lawyer's opinion letter.

The cases Plaintiffs cite (at 21-22) do not support the notion that a court can pick through a lawyer's tasks in a transaction and select one or more that can be deemed non-adversarial. *McLane*, 546 N.E.2d at 499, is inapposite because all it did was to recognize a duty as to a single *transaction*—drafting a will.  It said nothing about a lawyer owing different duties depending on the *task* assigned. Plaintiffs' remaining cases did not involve lawyers and are thus wholly irrelevant.

4.     **There is *no* allegation that GM's primary purpose in retaining Mayer Brown was to influence *Plaintiffs* or JPMorgan as *their* agent.**

Plaintiffs' complaint fails for a separate and independent reason: even if ¶33 sufficiently pled GM's intent to influence JPMorgan as agent for the *Synthetic Lease* Lenders (it does not), it says nothing about the *Term Loan*, the *Term Loan* Lenders, or JPMorgan as the *Term Loan* Lenders' agent. As the District Court correctly found, it would unduly expand the scope of potential claimants to allow plaintiffs whose interests *no one* involved in the transaction had in mind to sue Mayer Brown.  (S.A. 11-12)

When GM hired Mayer Brown to represent it in the *Synthetic Lease* payoff, GM did not know Mayer Brown would erroneously include a *Term Loan* UCC form in drafts of *Synthetic Lease* closing documents or that these documents would affect the *Term Loan* in any way. Thus, Plaintiffs' allegation that GM retained Mayer Brown to influence "JPMorgan" necessarily means "JPMorgan as agent for the Synthetic Lease Lenders." Indeed, as the Amended Complaint (¶46) makes clear, the Synthetic Lease and Term Loan were two separate transactions "completely unrelated to each other." The lenders were different, and, although JPMorgan acted as agent in both transactions, it was acting separately and on behalf of different principals in each transaction.  Plaintiffs do not allege that Mayer Brown was aware that the Term Loan -- or Plaintiffs -- even existed.

Paragraph 33 does not allege—even in a conclusory way—that GM's primary purpose and intent was to influence:  (a) the *Term Loan* Lenders or JPMorgan as agent for the *Term Loan* Lenders; or (b) anything having to do with the *Term Loan*.  Indeed, ¶33 says the exact opposite, alleging that GM's primary purpose was to influence the *Synthetic Lease* payoff and JPMorgan's conduct as agent for the *Synthetic Lease* Lenders.

Caught in this inescapable logic trap, Plaintiffs assert (at 38) that the distinction between JPMorgan as agent for the Synthetic Lease Lenders and JPMorgan as agent for the Term Loan Lenders is a "fiction." Not only is this unsupported by any law, contrary to ¶33's allegations and inherently illogical, but it is also the opposite of what Plaintiffs allege in the pending Adversary Proceedings:  there, Plaintiffs claim that JPMorgan as agent for the *Synthetic Lease* Lenders is a *different* entity from JPMorgan as agent for the *Term Loan* Lenders.[1]  For example, the Fifth Affirmative Defense filed in the Adversary Proceedings by Montgomery (one of the named Plaintiffs in the instant case) states:

> The Termination Statement is void and ineffective
> because JPMorgan, in its capacity as
> Administrative Agent for a syndicate of financial
> institutions on a different financing for General

---

[1]  The Court may take judicial notice of these Adversary Proceedings.  *See Virnich v. Vorwald*, 664 F.3d 206, 209 (7th Cir. 2011).

> Motors (the "Synthetic Lease"), was not the secured
> party of record under the Term Loan UCC
> Financing Statements and therefore had no power
> or authority to cause the Termination Statement to
> be filed.

(Adversary Proceedings, Dkt. No. 292, at 61.)  The Fifth Affirmative Defense

asserted by Oakland (the other named Plaintiff herein) is similar.  (*Id.*, Dkt.

No. 295, at 60-61.)

Plaintiffs assert (at 38-41) that non-lawyer cases, including *Rozny v.

Marnul*, 250 N.E.2d 656 (Ill. 1969), allow expansion of liability to an

unbounded number of plaintiffs.  Yet they ignore the Illinois Supreme Court's

later *Pelham* decision, which expressly held that lawyers should not be subject

to liability to an unbounded number of plaintiffs.  440 N.E.2d at 99.  Plaintiffs

also say (at 41) that Mayer Brown's liability would not be unbounded because

there are "only" 400 Term Loan Lenders. But 400 is a large number and the

potential liability Plaintiffs seek to impose on Mayer Brown is vast. As the

District Court recognized (at S.A. 12), Plaintiffs' arguments would expose not

only Mayer Brown but every law firm in Illinois to potentially ruinous liability

to an unknown and limitless number of non-clients who might be affected by

the lawyer's actions.

Plaintiffs argue (at 36-37) that "Illinois agency law" allows them to sue

as principals of their agent. But the cases they cite do not come close to

supporting this broad proposition.  All of those cases are *fraud* cases, and all

23

but one rely on Section 315 of the Restatement 2d of Agency, which allows a principal to bring a claim for *fraud* done to its agent. That Section says nothing about legal malpractice or negligent misrepresentation claims. And *Pelham* provides the only standard for deciding whether a principal can bring suit against a lawyer for wrongs done to the agent.

*     *     *

Based on all of the foregoing, Plaintiffs' duty allegations fail the controlling *Pelham* test.  If Plaintiffs were right, lawyers who draft closing documents would always be subject to liability to the other side of the transaction.  After all, in every transaction, all parties need to sign documents necessary to close the transaction. It cannot satisfy *Pelham* merely to allege the always-true fact that a lawyer's client intended to complete the transaction and hoped the other side would agree to its counsel's version of the documents necessary to do so.

**B.  Plaintiffs' new argument that *Pelham* does not apply because Mayer Brown represented JPMorgan on unrelated matters was waived and is meritless.**

**1.  Plaintiffs waived this new argument.**

Having failed to convince the District Court that they satisfy the applicable *Pelham* test, Plaintiffs have switched course on appeal. They now argue (at 8-14) that *Pelham*—which sets forth the circumstances under which lawyers owe duties to *non-clients*—does not apply because Mayer Brown

represented JPMorgan on unrelated matters and was thus a *client*. Plaintiffs did not raise this argument in the District Court and so waived it. Plaintiffs "'cannot change course on appeal to raise an argument different than the one presented to the district court'." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 720 (7th Cir. 2012), quoting *MMG Fin. Corp. v. Midwest Amusements Park LLC*, 630 F.3d 651, 659 (7th Cir. 2011).

The fact that in the District Court Plaintiffs referred generally to Mayer Brown's representation of JPMorgan on unrelated matters does not change the result. As the District Court noted (S.A. 8-9), "plaintiffs have not articulated[ ] how defendants' attorney-client relationship with JPMorgan on unrelated matters is relevant to GM's intent in hiring [Mayer Brown] with respect to the Synthetic Lease payoff." This Court has "specifically emphasized that 'a party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms.'" *Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) (citation omitted). In other words, "even arguments that have been raised [below] may still be waived on appeal if they [were] underdeveloped, conclusory or unsupported by law." *Puffer*, 675 F.3d at 718. That is the case here, where Plaintiffs devote seven pages of their Brief to an argument that was not made below and cite numerous cases that the District Court was never given an opportunity to consider.

## 2. In any event, Mayer Brown's duties to JPMorgan were limited to matters in which it represented JPMorgan.

Even apart from waiver, Plaintiffs' new argument fails as a matter of law. Under Illinois law, the mere existence of an attorney-client relationship between Mayer Brown and JPMorgan on unrelated matters did not give rise to a duty on Mayer Brown's part to protect JPMorgan's interests in the transaction at issue here. To the contrary, an attorney's duty is defined and limited by the subject matter or purpose for which the attorney was hired:

> Consequently, because the duty owed by the attorney arises out of a contractual relationship, it is necessarily limited by the scope of the contract of engagement.

*Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. App. Ct. 1995). *See also Dahlin v. Jenner & Block L.L.C.*, 2001 WL 855419, *5 (N.D. Ill. Jul. 26, 2001) ("to properly state a claim for legal malpractice where an attorney has failed to advise a client, the client must allege that the scope of representation sought by the client included the advice that the defendant failed to give."); *Simon v. Wilson*, 684 N.E.2d 791, 801 (Ill. App. Ct. 1997) ("An attorney's duty to a client is measured by the representation sought by the client and the scope of the authority conferred.").

*Fitch v. McDermott, Will & Emery, LLP*, 929 N.E.2d 1167, 1184 (Ill. App. Ct. 2010), is particularly instructive. There, beneficiaries of a decedent's

estate brought an action against the law firm that drafted the decedent's estate plan. One beneficiary had also retained that firm to advise him on his own estate plan. The court held that, even though the beneficiary was a client for other purposes, he was a *non-client* for purposes of the firm's advice to the decedent. *Id.* at 1184-85. The firm had no duty to advise a "nonclient as to [the] matter [at issue]" about its performance of services for another client. *Id.* at 1185. Similarly here, although JPMorgan was Mayer Brown's client on unrelated matters, it was a non-client as to the Synthetic Lease and the Term Loan, and thus Mayer Brown owed no duty to it with respect to the Synthetic Lease or Term Loan.

Indeed, Mayer Brown had no duty as to those subjects any more than it was responsible for advising JPMorgan on personal injury claims, general business issues, or any other matters that JPMorgan did not hire Mayer Brown to address. Were it otherwise, an attorney could never be hired for a particular matter without turning into a guarantor that all of the client's legal affairs were in order.

Plaintiffs cite no cases that support their novel theory. Instead, they take broad general statements regarding lawyers' fiduciary duties and attempt to apply them to this very different situation. For example, *DeLuna v. Burciaga*, 857 N.E.2d 229 (Ill. 2006) (Brief at 9, 13), involved a lawyer who chose to file a medical malpractice action without a statutorily required affidavit in order to test the constitutionality of the statute requiring the

affidavit.  *Id.* at 233.  The lawyer then misrepresented the status of the case to his client.  *Id.* at 247.  Not surprisingly, the court held that the attorney violated his fiduciary duty to his client on the very matter for which he was retained.  Nothing in *DeLuna* suggests that the attorney owed any duty to the client with respect to *unrelated* matters in which he did not represent the client.

*Christison v. Jones*, 405 N.E.2d 8, 10 (Ill. App. Ct. 1980) (Brief at 9, 11), is equally irrelevant. It holds only that legal malpractice actions cannot be assigned.  The case says nothing about duties to clients on matters on which attorneys do not represent them. If anything, *Christison's* emphasis on not allowing strangers to the attorney-client relationship to assert malpractice claims defeats Plaintiffs' argument that they—complete strangers to Mayer Brown—can bring this malpractice claim against Mayer Brown.  (*See also* Section I.B.3 below.)

Similarly, none of the cases cited in Plaintiffs' Brief (at 11-12) supports their argument that Mayer Brown can be liable to JPMorgan for *negligent* misrepresentation on a matter *unrelated* to its representation of JPMorgan. None of those cases involved lawyers, all involved *intentional* misrepresentations, and all involved representations related to the reason the fiduciary was hired.

Contrary to Plaintiffs' argument (at 9-13), the Illinois Rules of Professional Conduct also do not support their theory that Mayer Brown owed

duties to JPMorgan on matters in which JPMorgan was not its client.
Plaintiffs cite Rule 1.7, which prohibits a lawyer from undertaking any
representation (whether related or not) directly adverse to another client
unless both clients give informed consent. But the Amended Complaint does
not allege that Mayer Brown failed to obtain informed consent from both
JPMorgan and GM to Mayer Brown's representation of GM in the Synthetic
Lease, nor does it claim that Mayer Brown violated Rule 1.7.

Because there is no allegation Mayer Brown violated Rule 1.7, cases
disqualifying lawyers from representing parties adverse to existing clients are
wholly inapposite.  Both of the cases Plaintiffs cite (at 11) for the proposition
that an attorney can "harm" a client on unrelated matters arise in the
disqualification context. Neither of them addresses the key question
here—whether a lawyer owes duties to a non-client because he has a client
relationship in an unrelated matter.

Rule 1.4 is the only other Rule of Professional Conduct Plaintiffs cite (at
10). But that Rule supports Mayer Brown by making clear that a lawyer's
disclosure duty relates only to the "matter" for which the lawyer was hired:  "A
lawyer shall explain *a matter* . . . to permit the client to make informed
decisions regarding *the representation*." (Emphasis added.) The Rule does not
impose a free-floating duty to explain anything and everything to anyone who
has a client relationship with respect to any matter. That is why in a
malpractice case "the client must allege that the scope of representation

29

sought by the client included the advice that the defendant failed to give."
*Dahlin*, 2001 WL 855419 at *5.

Plaintiffs cite no cases holding that an attorney has Rule 1.4 disclosure obligations as to unrelated matters, let alone cases imposing disclosure obligations to the other side of a transaction in which the lawyer represents a different client and the other side is represented by its own counsel. The cases Plaintiffs do cite are inapposite. For example, *Hatchett v. W2X, Inc.*, 993 N.E.2d 944, 965-66 (Ill. App. Ct. 2013) (Brief at 10, 12), involved an attorney who failed to inform a client about matters *directly related* to her representation of that client.  The court did not suggest that lawyers have duties to inform clients about matters unrelated to their representation of those clients.

### 3.    Plaintiffs have no standing to assert Mayer Brown's duties to JPMorgan in unrelated matters.

Plaintiffs' new theory fails for another reason—Plaintiffs do not allege that Mayer Brown had any client relationship with them or with the Term Loan Lenders or with JPMorgan as agent for the Term Loan Lenders. As demonstrated above, any supposed obligation Mayer Brown owed to JPMorgan (there was none) would have been owed to JPMorgan as agent for the *Synthetic Lease* Lenders. Any such duty would not have extended to Plaintiffs, who were not *Synthetic Lease* Lenders. As the District Court explained (at S.A. 12), "[t]his theory of liability is too expansive and fails to

30

comply with the Illinois Supreme Court's concern that liability not extend to an unlimited and unknown number of potential plaintiffs." (Internal quotation omitted.)

To accept Plaintiffs' new argument, the Court would have to expand the duty chain even further. Plaintiffs' new argument does not rely on an alleged duty arising from JPMorgan's status as agent for the Synthetic Lease Lenders. Nor do Plaintiffs rely on JPMorgan's status as agent for the Term Loan Lenders. Instead, Plaintiffs rely on Mayer Brown's representation of JPMorgan in matters unrelated to *either* the Synthetic Lease or Term Loan. That attenuated connection cannot possibly have given rise to any duty on Mayer Brown's part to Plaintiffs or the proposed class.

*     *     *

Plaintiffs' "unrelated matters" argument fails. Indeed, the present case is a perfect example of the havoc that would be caused if Plaintiffs were right that a lawyer's fiduciary duties to a client impose duties of disclosure on matters unrelated to the lawyer's representation of that client. Mayer Brown was hired by GM to represent GM in the Synthetic Lease payoff. Clearly, Mayer Brown had fiduciary obligations to GM in connection therewith. But Plaintiffs' argument would impose on Mayer Brown fiduciary disclosure obligations to JPMorgan in the same matter. Would Mayer Brown therefore be obligated to disclose GM's goals to JPMorgan? Would it be required to explain the transaction to JPMorgan in sufficient detail to allow JPMorgan to

make informed decisions (as required by Rule 1.4)?  All of that would clearly violate Mayer Brown's duties to GM, including its duty of undivided loyalty. The entire concept is illogical and unworkable.

## C.    Plaintiffs' new "voluntary undertaking" argument was waived and is meritless.

### 1.    Plaintiffs waived this new argument.

Plaintiffs' next argument (at 14-20) is also waived.  Plaintiffs argue—for the first time on appeal—that *Pelham* established a second basis for imposing duties on attorneys:  a "voluntary undertaking."  Having failed to argue that there is a "voluntary undertaking" exception to *Pelham* in the District Court, Plaintiffs have waived that argument on appeal. *See Puffer*, 675 F.3d at 720; *MMG*, 630 F.3d at 659.

### 2.    There is no voluntary undertaking exception.

In any event, there is no voluntary undertaking exception to *Pelham*. Lawyers who "undertake" to perform certain tasks while representing their client in a transaction do not owe a duty to the other side unless the rest of the *Pelham* test is satisfied. *Pelham's* holding as to lawyers' duties to non-clients could not have been clearer:

> We conclude that, for a nonclient to succeed in a
> negligence action against an attorney, he must
> prove that the primary purpose and intent of the

> attorney-client relationship itself was to benefit or
> influence the third-party.

*Pelham*, 440 N.E. 2d at 100. Thus, there is no duty to a non-client unless the

primary purpose and intent of the attorney's client was to benefit or influence

the third party.

To be sure, *Pelham* speculated that an attorney "*may*" have a duty to a

non-client if the attorney undertook to accomplish a particular task and both

parties to the transaction were relying on the attorney to do so:

> We believe a different situation would confront us if
> this complaint had alleged sufficient facts to show
> that the defendant had undertaken a duty to notify
> the insurance company or the husband's employer of
> the provision in the divorce decree. In that situation,
> the attorney *may* have a duty to exercise reasonable
> care because his client and the plaintiffs herein
> could have justifiably relied on that undertaking.

*Pelham*, 440 N.E. 2d at 101 (emphasis added).  But this discussion of what

*might* happen *if* different facts were alleged does not create a second,

independent basis for attorney liability.  This is so for at least three reasons.

*First*, this discussion was hypothetical. The court did not decide what

would have happened under the circumstances it suggested. Because this

discussion was unnecessary to the decision and was "uttered as an aside," it

was non-binding *dicta.  See, e.g., Exelon Corp. v. Dep't of Revenue*, 917 N.E. 2d

899, 907 (Ill. 2009) ("[o]biter dictum refers to a remark or expression of opinion

33

that a court uttered as an aside, and is generally not binding authority or precedent within the *stare decisis* rule").

*Second*, after *Pelham*, every case in which an Illinois court has pointed to a voluntary undertaking also applied *Pelham's* "client's primary purpose and intent" test. No Illinois court has held an attorney's voluntary undertaking *standing alone* creates duties to third parties.

For example, in *Geaslen*, 613 N.E. 2d 702 (Brief at 18), the court did not recognize a duty arising solely out of a voluntary undertaking. Although *Geaslen* held that attorneys who prepare opinion letters for non-clients at the direction of their clients can be liable to the non-clients, it held that "[a]ny duty that defendants owed to plaintiffs did not arise out of a fiduciary relationship [to the non-client], but rather out of defendants' *obligation to their clients* to perform services for a third party." *Id.* at 704 (emphasis added). In other words, the court relied on the *client's* intent, not any unilateral voluntary undertaking by the *attorney*. The same was true in *Wafra Leasing Corp., 1999-A-1 v. Prime Capital Corp.*, 192 F. Supp. 2d 852, 869, 873-74 (N.D. Ill. 2002) (Brief at 19), where the attorney issued an opinion letter "at the direction of [his] client."

In *Auto-Owners Ins. Co. v. Konow*, 57 N.E.3d 1244 (Ill. App. Ct. 2016) (Brief at 19), there was no argument that the lawyer had voluntarily undertaken a duty, and the court did not impose a duty based on any such undertaking. Finally, *Wyatt v. Sanan*, 2008 U.S. Dist. LEXIS 33329 (N.D. Ill.

34

Apr. 22, 2008) (Brief at 16), held that a third party's claim *failed* to meet the *Pelham* test and did *not* impose a duty on the attorney-defendant as a result of a voluntary undertaking.[2]

*Third*, this Court must "take state law as it is rather than predicting novel developments." *Knight v. Enbridge Pipelines (FSP) LLC*, 759 F.3d 675, 677-78 (7th Cir. 2014). No Illinois court has ever held that an attorney owes a duty to a non-client if the attorney undertakes to accomplish a particular task. Accordingly, this Court should not expand Illinois law to create a new source of duty for attorneys to non-clients.

### 3.    Plaintiffs' allegations show that Mayer Brown satisfied any such voluntary undertaking.

Plaintiffs' "voluntary undertaking" theory fails for yet another reason: unlike the hypothetical posed in *Pelham*, Mayer Brown did not undertake sole responsibility for deciding what security interests should be released. Plaintiffs' voluntary undertaking argument (at 19) rests on ¶¶ 61, 63 and 67 of the Amended Complaint, which allege that Mayer Brown was the "responsible party" for the termination statement that terminated the security for the Term Loan. The complaint quotes the Closing Checklist as follows:

---

[2]  The other cases Plaintiffs cite for their voluntary undertaking rule are out-of-state cases that have no applicability here.

35

| Document | Responsible Party | Status |
|---|---|---|
| Termination of UCCs (central, DE filings) | | |
| * * * | | |
| Financing statement as to equipment and fixtures and related collateral at certain U.S. manufacturing facilities recorded on 11.30.06 as File Number 6416808 4 | MB [**Mayer Brown**] | **Draft circulated by MB** on 10/15/08 |

(Bolding in Amended Complaint) (A26).

This checklist contradicts Plaintiffs' assertion that Mayer Brown was *the* "Responsible Party" for the UCC Termination Statements. It is clear that Mayer Brown's responsibility was to prepare "*drafts*" for Simpson's review and then to file the final version that Simpson approved. There is no allegation that Mayer Brown prepared or filed the termination statement on its own without first obtaining the approval of JPMorgan and its counsel.

Moreover, Plaintiffs are collaterally estopped from claiming otherwise.[3] The Second Circuit specifically concluded (based upon facts established in the bankruptcy court) that JPMorgan and Simpson reviewed and approved *all* of the closing documents before any termination statement was filed. *See supra* at 3-4. In the Second Circuit, collateral estoppel does not require absolute

---

[3] In their original complaint, Plaintiffs affirmatively alleged that JPMorgan and its counsel had reviewed and approved Mayer Brown's drafts. (Dkt. No. 1, ¶¶75, 79.) After Mayer Brown moved to dismiss relying, in part, on those allegations (Dkt. No. 21, pp. 13, 17, 23, 27), Plaintiffs removed many of those allegations. In moving to dismiss the Amended Complaint, Mayer Brown relied upon the Second Circuit opinion and invoked the doctrine of collateral estoppel.

finality. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 366-67 (2d Cir. 1992)

(finality not required where decision not "avowedly tentative"), *abrogation on*

*other grounds recognized by Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005);

*Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961)

(same).[4]  Collateral estoppel bars a party—and those (like Plaintiffs) whose

interests were represented by a party—from relitigating in a second

proceeding a factual or legal issue so long as there was a full and fair

opportunity to litigate the issue, the decision on the issue was necessary to

support a decision that was not "avowedly tentative," and it was subject to

appellate review.  *See M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F. 3d 263,

284-86 (2d Cir. 2012) (discussing effect of collateral estoppel on privies);

*Metromedia*, 983 F.2d at 366-67; *Lummus*, 297 F.2d at 89.  All of these

elements are present here. Significantly, Plaintiffs did not contest the

applicability of collateral estoppel when Mayer Brown argued this point in the

District Court (Dkt. No. 41, p. 21, n.5) and have, therefore, waived any

argument to the contrary. *See Puffer*, 675 F.3d at 720; *MMG Fin. Corp.*, 630

F.3d at 659.

Further, Plaintiffs allege that Mayer Brown was responsible only for

drafting the documents necessary to terminate the financing statement

identified as File Number 6416808 4 (*i.e.*, the Term Loan Security Interest),

---

[4]  Illinois courts determine the collateral estoppel effect of a judgment by the law of the jurisdiction where the judgment was entered.  *In re Complaint of Am. River Transp. Co.*, 712 F. Supp. 2d 735, 737 (N.D. Ill. 2010).

which had *already* mistakenly been included in the Closing Checklist.  Mayer Brown was not "responsible" for the *decision* as to *whether* the termination statement relating to the Term Loan should or would be filed. Thus, Mayer Brown is alleged to have done exactly what it was supposedly responsible for -- drafting and, after JPMorgan and Simpson's review, filing the termination statement.

In contrast to this case, in all of the (out-of-state) cases Plaintiffs cite where a lawyer was held liable for a voluntary undertaking, the lawyer agreed to take sole responsibility for a particular task and then failed to do it properly.  For example, in *Schwartz v. Greenfield, Stein & Weisinger*, 396 N.Y.S.2d 582, 582-83 (N.Y. Sup. Ct. 1977) (Brief at 16-17), the attorney agreed to file a financing statement and then filed it in the wrong county.  In contrast, here, Mayer Brown did what it agreed to do -- prepared the draft termination statement and then, after it was approved by JPMorgan and Simpson, filed it where it was supposed to be filed.

### D.    Negligent misrepresentation claims are governed by *Pelham.*

As the District Court (at S.A. 7) properly held, Plaintiffs' negligent misrepresentation claims are also governed—and defeated—by the *Pelham* test.  *Pelham* did not limit its holding to legal malpractice cases.  Rather, it set forth a rule for when "a nonclient [can] succeed in *a negligence action* against an attorney."  440 N.E.2d at 100 (emphasis added).  Thus, *Pelham* applies to

*all* negligence actions against attorneys, including legal malpractice and *negligent* misrepresentation claims.

After the District Court's decision, *Auto Owners*, 57 N.E.3d at 1247-50, squarely held that plaintiffs must satisfy the *Pelham* test to impose duties to non-clients on attorneys even when the claim is negligent misrepresentation. Plaintiffs have no answer to *Auto Owners* except to claim in a footnote (at 36 n.7) that it is inapplicable because it did not deal with the so-called voluntary undertaking exception. That is a *non sequitur*: whether or not *Auto Owners* dealt with the (non-existent) voluntary undertaking exception, it unequivocally held that a negligent misrepresentation claim brought by a non-client is governed by *Pelham*.

There are at least two other Illinois cases applying *Pelham* to negligent misrepresentation claims:  *Kelley v. Carbone*, 837 N.E.2d 438, 441 (Ill. App. Ct. 2005), and *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 613 (Ill. App. Ct. 1999). As *Kelley* held:

> To plead a cause of action for *negligent misrepresentation* against a provider of information employed by a third party, a plaintiff must allege that the purpose and intent of the relationship was to benefit or influence the plaintiff.

837 N.E. 2d at 441 (Emphasis added).

Plaintiffs argue (at 34) that *Kelley* stated its conclusion without analysis.  But *Kelley's* statement of Illinois law cannot be ignored unless there

39

is a substantial reason to believe the Illinois Supreme Court would not follow it.  *Allstate Ins. Co. v Menards*, 285 F.3d 630, 637 (7th Cir. 2002). There is no reason to believe the Illinois Supreme Court would decide the issue differently than the foregoing three appellate decisions.

The only Illinois case Plaintiffs cite (at 35) to support their argument is a non-lawyer case:  *Builders Bank v. Barry Finkel and Associates*, 790 N.E.2d 30 (Ill. App. Ct. 2003).  But even then, *Builders Bank* applied a test virtually identical to *Pelham*:  "the intent of the client for the accountant's work to benefit or influence the third party. . . ."  *Id.* at 35.

Against this case law, Plaintiffs offer only this Court's decision in *Greycas v. Proud*, 826 F.2d 1560 (7th Cir. 1987). But the discussion Plaintiffs rely on is vague *dicta*. After finding the lawyer there liable for malpractice under the *Pelham* test, the Court stated "[a]ll this *assumes* that *Pelham* governs this case, but *arguably* it does not, for *Greycas*, as we noted, *may have* decided to bring this as a suit for negligent misrepresentation rather than professional negligence." *Greycas*, 826 F.2d at 1563-64 (emphasis added). After a lengthy discussion, the Court stated that "we are led to *question* whether . . . these really are different torts, at least when both grow out of negligent misrepresentations by lawyers." *Id.* at 1564 (emphasis added).  As the District Court observed (at S.A. 8), *Greycas* does not announce a different standard to determine whether a lawyer owes a duty to a non-client for negligent misrepresentation. At most, it poses—but does not answer—a

question, that later Illinois cases directly answered in favor of applying

*Pelham*.  *E.g., Auto Owners, Kelley* and *Gallagher*.

Further, numerous district courts applying Illinois law in cases decided *after Greycas* have come to the same conclusion as the uniform decisions of the Illinois appellate court.  *E.g.*, *Edelman v. Belsheim & Bruckert, LLC*, 2012 WL 1933755, at *5 (S.D. Ill. May 29, 2012) (in a negligent misrepresentation case, "the plaintiff must allege that the purpose and intent of the relationship was to benefit [or] influence the plaintiff"); *Mercantile Capital Partners v. Agenzia Sports, Inc.*, 2005 WL 351926, at *8 (N.D. Ill. Feb. 10, 2005) (lawyers have a duty to third parties for negligent misrepresentation only if the *Pelham* test is satisfied); *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 2005 WL 843297, at *10 (N.D. Ill. Jan. 20, 2005) (same); *Wafra Leasing Corp.*, 192 F. Supp. 2d at 873 (same); *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 1988 WL 101267, at *5-6 (N.D. Ill. Sept. 23, 1988) (same).

Plaintiffs cite (at 35) various district court cases that do not involve attorneys, but to no avail.  For example, although *Walton Risk Services, Inc. v. Clarendon America Ins. Co.*, 2002 WL 31415769 (N.D. Ill. Oct. 25, 2002), did not apply the *Pelham* test to a negligent misrepresentation claim against an *actuary*, it cited *Gallagher*, stressing that "if there is no duty in a professional negligence claim, the same reasoning will preclude a finding of a duty in a negligent misrepresentation claim." *Id.* at *5.  And, contrary to Plaintiffs' argument (at 35), *Johnson Bank v. George Korbakes & Co.,* 2005 WL 4983515,

*12 (N.D. Ill. Aug. 3, 2005), applied a test identical to *Pelham* in determining whether an auditor owed a duty.

Plaintiffs also assert (at 30) that Mayer Brown owed a duty not to make negligent misrepresentations to JPMorgan because of its longstanding representation of JPMorgan on unrelated matters. This argument is defeated for the reasons outlined in Section I.B above. Similarly, Plaintiffs' assertion (at 31) that Mayer Brown voluntarily undertook not to make negligent misrepresentations is defeated for the reasons outlined in Section I.C above.

## II.    Plaintiffs failed to sufficiently allege reliance.

Apart from lack of duty, the Amended Complaint fails for another independent reason: Plaintiffs failed to sufficiently allege reliance. Although the District Court did not rule on this argument, Mayer Brown made it below (Dkt. No. 41, pp. 22-31) and this Court may affirm on any basis supported by the record. *Rocha*, 826 F.3d at 909.

### A.    Reliance is a necessary element of both negligent misrepresentation and legal malpractice.

Plaintiffs' negligent misrepresentation claim (Count I) requires Plaintiffs to plead reasonable reliance. *E.g., Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287-88 (Ill. App. Ct. 2013). Reasonable reliance also is a necessary (though implicit) element of Plaintiffs' malpractice claim (Count II). That is because there is no legal malpractice without causation and negligent legal advice causes injury only if the plaintiff relies on

that advice. *Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*, 980 N.E.2d 215, 235 (Ill. App. Ct. 2012) (no proximate cause where legal malpractice plaintiffs failed to prove they relied on negligent advice). Thus, reliance is an implicit element of legal malpractice.

The Illinois Supreme Court has come to the same conclusion, albeit in the context of consumer fraud. Although reliance is not an express element of consumer fraud, it is an implicit element thereof subsumed by the causation requirement. *DeBouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (holding that there can be no proximate cause without reliance). Thus, the Court should predict the Illinois Supreme Court would consider reasonable reliance an implicit element of legal malpractice as well.

### B.    Plaintiffs do not allege that *they* or JPMorgan as *their* agent relied on Mayer Brown.

Plaintiffs made no allegation -- not even a conclusory one -- that they (Term Loan Lenders) or JPMorgan as *their* agent relied on anything that Mayer Brown said or did. Instead, Plaintiffs illogically tried to plead reliance by alleging (at ¶84) that JPMorgan as agent for the *Synthetic Lease* Lenders relied on Mayer Brown. For this reason alone, the dismissal of the Amended Complaint—brought solely by and on behalf of Term Loan Lenders—should be affirmed for failure to allege reliance.

### C.     Plaintiffs do not specifically or plausibly allege that JPMorgan as agent for the Synthetic Lease Lenders relied on Mayer Brown.

Even if Plaintiffs (*i.e.*, *Term Loan* Lenders) theoretically could satisfy the reliance element by alleging reliance by JPMorgan as agent for the *Synthetic Lease* Lenders (they cannot), the Amended Complaint would still fail. That is because Plaintiffs allege no plausible facts supporting their conclusory allegation in ¶84 that JPMorgan as agent for the Synthetic Lease Lenders *actually relied* on Mayer Brown. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice.").

The facts alleged in ¶84 do not support Plaintiffs' claim that JPMorgan relied on Mayer Brown, rather than on its own counsel. Plaintiffs argue that GM and JP Morgan were not adverse, but that fails for the reasons outlined above in Section I.A.3.a.  Plaintiffs also cite Mayer Brown's reputation and prior representation of JPMorgan on unrelated matters, but those allegations also do not make it plausible that JPMorgan actually relied on Mayer Brown when Mayer Brown was representing GM. In fact, it defies logic to claim that JPMorgan (a sophisticated lender and one of the world's largest banks) represented by Simpson (a renowned law firm) relied on its adversary's counsel in deciding what security to release.

What is missing from the Amended Complaint are *any facts* that make *plausible* Plaintiffs' "threadbare recitals" of the reliance element.  *See Iqbal*,

556 U.S. at 664.  For example, there is no allegation that, in reliance on Mayer

Brown's initial drafting of documents, JPMorgan declined to review those

drafts, declined the opportunity to retain independent counsel to review them,

or instructed its counsel to forego reviewing them. Nor could Plaintiffs make

any such allegations. JPMorgan *did* retain independent counsel, and the

Second Circuit concluded that Simpson *did* undertake a review of the drafts

and that both Simpson and JPMorgan *did* approve them.

### D.     Plaintiffs' allegations show that any reliance was unreasonable.

In any event, even if JPMorgan (in any capacity) had relied on Mayer

Brown, any such reliance would have been unreasonable as a matter of law.

*See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th

Cir. 2001) (reliance must be reasonable). In the Second Circuit proceedings

cited above, the Delaware Supreme Court answered a certified question about

the termination statement. In *Official Comm. v. JPMorgan Chase Bank, N.A.*,

103 A.3d 1010 (Del. 2014), the court made it clear that JPMorgan was

obligated to protect itself by reviewing that statement:

> Before a secured party authorizes the filing of a
> termination statement, it ought to review the
> statement carefully and understand what security
> interests it is releasing and why.  A secured party is
> the master of its own termination statement; it
> works no unfairness to expect the secured party to

> review a termination statement carefully and only
> file the statement once it is sure the statement is
> correct.

*Id.* at 1016.

Further, except perhaps in the unique circumstance of opinion letters that expressly invite reliance, it is unreasonable as a matter of law for a party with its own counsel in a transaction to rely on representations made by the other side's attorney. *Merrilees v. Merrilees*, 998 N.E.2d 147, 158-59 (Ill. App. Ct. 2013); *see also Gold*, 513 N.E.2d at 448-49 (unreasonable to rely on counsel for other side of transaction); *Lyons v. SBCI Swiss Bank Corp. Inv. Banking, Inc.*, 1995 WL 151810, at *3-4 (N.D. Ill. Mar. 31, 1995) (Illinois law) (no reasonable reliance on representations made by another party in negotiations).

*Merrilees* is instructive. There, the plaintiff and her husband negotiated a settlement of their divorce. *Id.* at 153-54. Later, the plaintiff sued *her husband's lawyer* for fraud. *Id.* at 154. The trial court dismissed that claim, and the appellate court affirmed. *Id.* at 154-55, 158-59, 164. The appellate court held that the plaintiff could not plead *reasonable* reliance on representations made by the opposing side's attorneys because the plaintiff had her own lawyer and financial expert advising her regarding the transaction. *Id.* at 158-59. If that is the law in a divorce case, it is certainly the law in a multimillion dollar transaction where both parties are represented by sophisticated counsel.

*Gold* also is on point.  As discussed above in Section I.A.2, in *Gold*, after the sale of a business, the *buyers* brought a negligent misrepresentation claim against the *sellers' lawyer*.  513 N.E.2d at 447-48.  The trial court granted the lawyer's motion to dismiss and the appellate court affirmed. *Id.*  Although the appellate court did not mention whether the buyer had its own counsel, it held that "if the *buyers* reposed trust and confidence [in the *sellers' attorney*], it was unreasonably placed."  *Id.* at 448 (emphasis added).

Reliance also would not have been reasonable here because JPMorgan and its counsel had every opportunity to discover the truth of whatever representations Mayer Brown may have made to them. "As a matter of *law*, if an ample *opportunity* to discover the truth of the representations existed, then reliance on them was not justified." *O'Connor v. Asperger Caraher LLC*, 2006 WL 3210498, at *6 (N.D. Ill. Nov. 6, 2006) (Illinois law) (emphasis added) (citation, internal quotation marks and brackets omitted); *accord Neptuno v. Arbor*, 692 N.E.2d 812, 818-19 (Ill. App. Ct. 1998).  Indeed, a party who merely has *access* to a written document "may not reasonably rely on representations of other contracting parties respecting the *effect* of" the document.  *Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n*, 441 N.E.2d 864, 868 (Ill. App. Ct. 1982) (emphasis added); *see also Randazzo v. Harris Bank Palatine, N.A.*, 104 F. Supp. 2d 949, 952 (N.D. Ill. 2000) (Illinois law).

As the Illinois Supreme Court put it when addressing alleged misrepresentations about real estate title:

> The rule is well established that a party is not
> justified in relying on representations made when
> he has *ample opportunity* to ascertain the truth of
> the representations before he acts.  When he is
> afforded the *opportunity* of knowing the truth of the
> representations he is chargeable with knowledge;
> and if he does not avail himself of the means of
> knowledge open to him *he cannot be heard to say he
> was deceived by misrepresentations.*

*Schmidt v. Landfield*, 169 N.E.2d 229, 232 (Ill. 1960) (emphasis added).  More

recently, the Illinois appellate court put it this way:

> A person may not enter into a transaction with his
> eyes closed to available information and then charge
> that he has been deceived by another.

*Siegel Dev., LLC v. Peak Constr. LLC*, 993 N.E.2d 1041, 1060 (Ill. App. Ct.

2013) (citations, internal quotation marks and brackets omitted).

*Central States Joint Board v. Continental Assurance Co.*, 453 N.E.2d

932 (Ill. App. Ct. 1983), is on point. The court there considered whether one

party justifiably relied on representations the other made during negotiations

for an amended insurance policy.  *Id.* at 933-34.  The plaintiff later sued to

rescind the amendment, claiming fraudulent inducement due to the

defendant's failure to disclose that it had inserted a provision into the

amendment.  *Id.* at 934.  Although the trial court found for the plaintiff, the

appellate court reversed.  *Id.* at 933-35.  The appellate court held that the

plaintiff could not have reasonably relied on any representations (or lack thereof) from the defendant about the contract at issue because the plaintiff's attorney, the plaintiff's insurance consultant and another insurance company on plaintiff's behalf reviewed the amendment before plaintiff signed it. *Id.* at 936-37. The court reasoned that, because the plaintiff had ample opportunity to discover the unwanted provision, it could not have reasonably relied on any alleged misrepresentations with respect thereto. *Id.* at 937.

The same is true here. Plaintiffs' allegations demonstrate that JPMorgan and its counsel had ample opportunities to discover the truth of the alleged misrepresentations. After all, Mayer Brown's drafts were sent to a Simpson attorney. Indeed, *several* drafts of some of those documents were sent to Simpson, plus a follow-up email. The Simpson attorney reviewed the drafts and responded that the Mayer Brown associate did a "[n]ice job on the documents" and the Escrow Instructions were "fine." *In re Motors Liquidation Co.*, 777 F.3d at 105. The documents were, in turn, transmitted to JPMorgan, which approved them. *Id.* Both Simpson and JPMorgan had ample opportunities to discover the truth of the representations, making reliance on them unjustified. Indeed, according to the Amended Complaint (at ¶65), the contrasting dates of the Term Loan and Synthetic Lease should have been apparent to any reviewer from the face of the drafts.

As this Court has held, Illinois' law of reasonable reliance imposes on lenders (such as JPMorgan) a "duty to make an independent investigation

[which] includes the negative obligation of *not relying* on the representations,
predictions and hopes of a borrower [*i.e.*, GM]." *Teamsters Local 282 Pension
Tr. Fund v. Angelos*, 839 F.2d 366, 372 (7th Cir. 1988) (emphasis added)
(affirming summary judgment in favor of borrower and its lawyer due to lack
of reasonable reliance by lender).  In the Illinois Supreme Court's words, if the
party suing for a misrepresentation "does not avail himself of the means of
knowledge open to him[,] he cannot be heard to say he was deceived by
misrepresentations." *Schmidt*, 169 N.E.2d at 232.

## III.    Plaintiffs failed to sufficiently allege causation.

Apart from lack of duty and reliance, the Amended Complaint fails for
another independent reason:  lack of causation.

### A.    Causation is a required element of Plaintiffs' claims.

To sustain Count I's negligent misrepresentation claim, Plaintiffs also
had to plead that Mayer Brown's alleged misrepresentations proximately
caused their damages. *Zahorik v. Smith Barney, Harris Upham & Co.*, 664 F.
Supp. 309, 313 (N.D. Ill. 1987) (dismissing under Illinois law). Similarly, to
sustain Count II's legal malpractice claim, Plaintiffs had to plead proximate
cause establishing that "but for" Mayer Brown's negligence, they would not
have suffered damages. *Ignarski v. Norbut*, 648 N.E.2d 285, 288 (Ill. App. Ct.
1995) (summary judgment based on failure to plead causation); *see also Webb
v. Damisch*, 842 N.E.2d 140, 147-48 (Ill. App. Ct. 2005) (granting motion to

dismiss malpractice claim for failure to plead proximate cause); *Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 93 (Ill. App. Ct. 2004) (same). Plaintiffs failed to meet that pleading burden.

### B.    Plaintiffs' alleged harm was not foreseeable.

Apart from their failure to plead reliance (which is necessary for causation), Plaintiffs failed to plead that their injuries were foreseeable. "[P]roximate cause may be determined as a matter of law where (i) the facts are undisputed, and (ii) there can be no difference in the judgment of reasonable persons as to the inferences that may be drawn from the facts." *Huang v. Brenson*, 7 N.E.3d 729, 738 (Ill. App. Ct. 2014) (affirming dismissal of legal malpractice action for failure to plead proximate cause); *accord Cleveland v. Rotman*, 297 F.3d 569, 573-74 (7th Cir. 2002) (affirming dismissal of negligence claim against attorney because client's suicide not foreseeable). Proximate cause "requires a showing of legal cause, that is to say, foreseeability." *Huang*, 7 N.E.2d at 735. "The defendant's actions are the legal cause of the plaintiff's injury where a reasonable person in the defendant's position could foresee the plaintiff's injury as a likely result of the defendant's conduct." *Id.* Ultimately, "[t]he question is one of policy— How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" *City of Chi. v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1127-28, 1138 (Ill. 2004) (reversing appellate court's ruling as a matter of law and affirming trial court's dismissal where plaintiff failed to plead proximate cause).

Here, as a matter of law, Mayer Brown could not have foreseen that its work on the *Synthetic Lease* payoff would cause Plaintiffs' alleged injury. How could Mayer Brown have foreseen injury to Plaintiffs—who Mayer Brown is not alleged to have even known existed—concerning a transaction (the Term Loan) that it is not alleged to have known about?

In the District Court, Plaintiffs argued that the relevant question is "could Mayer Brown have reasonably foreseen that if it negligently prepared a UCC-3 termination statement that related to a loan that was not being paid off, it would adversely impact the secured loans of innocent third parties . . . ." (Dkt. No. 45, p. 27.) But that cannot be the relevant question, because it assumes the key issue: that Mayer Brown knew the termination statement it drafted related to a different loan than the loan being paid off. Instead, the relevant question is should Mayer Brown have foreseen that if it negligently prepared a termination statement *all* of the following would happen: (1) the statement would include the release of security for an *unrelated* loan that Mayer Brown did not know existed; (2) JPMorgan and Simpson would not correct the mistake despite reviewing it; (3) the unrelated security would happen to secure a loan for which JPMorgan also served as agent; *and* (4) the Delaware Supreme Court would hold (as a matter of first impression) that JPMorgan's approval of the filing of a termination statement with respect to the wrong security interest would be legally effective? An affirmative answer to each of the subparts of this question is highly unlikely; taken together, it

was unforeseeable to Mayer Brown that negligence on the Synthetic Lease transaction would cause losses to lenders on the Term Loan.

In the District Court (Dkt. No. 45, p. 28-29 & n.13), Plaintiffs argued that it was not necessary for Mayer Brown to foresee the specific identity of the *victims* of its alleged negligence. To support this argument, Plaintiffs cited *Home Loan Center, Inc. v. Flanagan*, No. 10 C 6787, 2012 WL 1108132 (N.D. Ill. Apr. 2, 2012). But *Home Loan* held no such thing. There, an escrow agent conducted a loan closing. The escrow instructions under which the agent was operating "required [it] to verify that it was actually the named borrower who signed the documents." *Id.* at *4. A stranger impersonated the "borrower" and convinced the escrow agent/closer to close the loan transaction. After it was discovered the "borrower" was an imposter, the lender sued the closing agent for negligence. In that context, the court held that the lender's injury was foreseeable. *Id.* at *7.

*Home Loan* is completely different from our case. There, the fact that the alleged *wrongdoer* was an imposter was the *only* unknown, and the focus of foreseeability was on that fact. The plaintiff *victim* (*i.e.*, the lender) was known. Indeed, it was one of the very parties with whom the defendant escrow agent *contracted*. In our case, however, the alleged *victims* (the Plaintiff Term Loan Lenders) were unknown. Indeed, it was not intended that they or the Term Loan would be involved in any way in the Synthetic Lease transaction or its payoff. In sum, it was in no way foreseeable—let alone a "likely result" as

required by *Home Loan* (at *6)—that Mayer Brown's alleged negligence on the Synthetic Lease would harm lenders in an entirely unrelated loan on which Mayer Brown was not working and of which it had no knowledge.

### C.    Plaintiffs' allegations establish an intervening cause.

The Amended Complaint also fails on causation because its allegations establish an intervening cause. As a matter of law, a lawyer's negligence does not proximately cause harm where the lawyer's negligence could have been corrected by other participants in the transaction. *See Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656-57 (7th Cir. 2014); *Mitchell v. Schain, Fursel & Burney, Ltd.*, 773 N.E.2d 1192, 1195 (Ill. App. Ct. 2002). In other words, a lawyer's negligence does not proximately cause damages where another lawyer—or the client itself—has the opportunity to correct the negligence. In such cases, the other attorney's or client's failure to cure the error is an intervening cause that itself proximately causes the client's harm and absolves the original lawyer from liability.

Thus, for example, in *Blythe Holdings*, this Court, applying Illinois law, affirmed dismissal of a malpractice case. There, the client hired a lawyer to help it purchase property from the City. 750 F.3d at 655. However, the purchase application the lawyer filed contained errors, which caused the application to be denied as incomplete. *Id.* The client could have cured the errors and completed the application, but it did not. *Id.* at 655-56. Instead, the client sued the lawyer for negligence. *Id.* at 656. This Court held the lawyer

54

did not proximately cause the client's failure to obtain the property, reasoning that "[s]ince [the client's] ability to acquire the vacant lots remained legally viable well after any alleged malpractice by [the lawyer], it was [the client's] failure to move forward with the application process, not malpractice on the part of [the lawyer], that doomed [the client's] real estate deal." *Id.* at 657.

When Mayer Brown prepared and submitted drafts of the documents at issue here to Simpson, the termination statement had not yet been filed and the Term Loan Security Interest had not yet been released. Indeed, Plaintiffs' allegations (¶¶60, 77) show the Term Loan Security Interest was not actually released until two weeks after Mayer Brown prepared and transmitted the initial drafts. The Second Circuit found that, during those two weeks, both Simpson and JPMorgan reviewed and approved Mayer Brown's drafts. *In re Motors Liquidation Co.*, 777 F.3d at 104-05. As a result, because: (1) JPMorgan was Plaintiffs' agent and Simpson was JPMorgan's lawyer; and (2) Mayer Brown's alleged negligence preceded Simpson and JPMorgan's review and approval of the drafts of the documents, the mistake could and should have been corrected by JPMorgan and/or Simpson.

Under Illinois law, Simpson and JPMorgan's ability to correct the documents before the Term Loan Security Interest was actually released means that Mayer Brown did not proximately cause Plaintiffs' alleged loss. *Blythe Holdings*, 750 F.3d at 657; *see also Mitchell*, 773 N.E.2d at 1195; *Webb*,

842 N.E.2d at 147-48; *Purmal*, 820 N.E.2d at 93; *Ignarski*, 648 N.E.2d at 288; *Zahorik*, 664 F. Supp. at 313.

## Conclusion

For the foregoing reasons, the District Court's dismissal of the complaint with prejudice should be affirmed.

Respectfully submitted,

MAYER BROWN LLP

By:   /s/ Stephen Novack
    Stephen Novack
    One Of Its Attorneys

Stephen Novack
Timothy J. Miller
Andrew P. Shelby
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900

*Attorneys for Defendant-Appellee*
*Mayer Brown LLP*

## Certificate Of Compliance

Pursuant to Fed. R. App. P. 32(a)(7)(C)(i), the undersigned hereby certifies that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,237 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32(b) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 12-point Century Schoolbook typeface for text and in 11-point Century Schoolbook typeface for footnotes.

/s/ Stephen Novack
Stephen Novack
*Attorneys for Defendant-Appellee*
*Mayer Brown LLP*

Dated:  January 23, 2017

**Certificate Of Service**

I hereby certify that on January 23, 2017, the Brief of Defendant-Appellee Mayer Brown LLP was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


  /s/ Stephen Novack
Stephen Novack